## BOWEN VS. WARNER.

1. STATUTE OF FRAUDS — PART PERFORMANCE — EVIDENCE.    To take a verbal contract for the sale and conveyance of land out of the statute of frauds on the ground of part performance, the existence of the contract as laid in the bill must be made out by clear and satisfactory proof, and the act of part performance must be of the identical contract set up. Loose and unconnected conversations held at various times and with different persons of an uncertain and in some respects contradictory character, will not serve to establish the existence of the contract.

2. WHAT ARE ACTS OF PART PERFORMANCE.    To take a parol agreement out of the statute on the grounds of part performance, the acts relied on must be such as unequivocally refer to and result from the agreement, and they must be such as would not have been performed but for that very agreement and with a direct view to its performance, and must be such as to leave no uncertainty in the case.

3. A. was in possession of government land and had made improvements thereon, and the same was subsequently purchased by B. of the United States, and A. alleged that at the time of his purchase B. verbally agreed to convey the same to him upon being repaid the purchase money, *held*, that the mere fact that B. continued to remain in possession *after* such purchase and agreement to convey, was not an act of part performance so as to take the case out of the statute of frauds.

APPEAL from the District Court for *Crawford* County.

The complainant *Elias S. Bowen* filed a bill against *Elihu Warner* to compel the specific performance of an alleged parol contract for the conveyance of a tract of land, and for an injunction to stay proceedings in an action at law instituted by defendant against the complainant, to recover rent for the use and occupation of the premises in question.

The bill charged that before the lands north of the Wisconsin river came into market, the complainant made a claim to and occupied and improved the tract of land, then belonging to the United States, under the act securing pre-emption rights to settlers on public lands; that the lands came into market June 16, 1841, at Muskoda, at

which time complainant had no money to purchase the
same, but the defendant, by Jared Warner, his agent, pro-
posed and agreed with him to enter the land in the name
of defendant, and that as soon after as complainant should
pay him the purchase money and interest, defendant
would convey the same to him ; that the land was entered
by the defendant through his said agent upon the faith of
such agreement, and that with the knowledge and appro-
bation of said agent the complainant continued to occupy
and improve said premises, and expended a considerable
sum of money in improving and cultivating the same ;
that defendant refuses to convey, although he had fre-
quently admitted the agreement, and particularly in
March, 1842, in the presence of one Lane; that on the
23d of May, 1842, complainant tendered to defendant
said purchase money and interest which he refused to
accept, and had brought an action against complainant
to recover for the rent of said premises, which action was
then pending.

The answer, which was under oath, denied all the alle-
gations of the bill in reference to said alleged agreement,
and denied that complainant had made any improvements
on the land, and denied that his occupancy thereof was
under any agreement for the conveyance thereof, or with
the knowledge or consent of the defendant, but admitted
that he purchased the land through Jared Warner, his
agent, but for his own use and benefit ; denied that said
Jared Warner had any authority to make such agreement
as was stated in the bill.    The complainant filed a general
replication.    The testimony of Joseph Curley was to the
effect that complainant made claim to the premises (lot 1
sec. 6, town 6, range 5) previous to the land sale and had
occupied it ever since.    Six or seven acres were broke and
there were two or three thousand rails on the premises,
and that the improvements were probably worth $100.
Immediately after the land was bid off at the land sale,
complainant observed to Jared Warner that so soon as
he (*Bowen*) paid the entrance money and interest, the

land would be his, Warner replied, yes. The land in dispute or a greater part of it was inclosed by C. Bowen (complainant's father) in his life-time in inclosing his claim. C. Bowen died in September, 1840. The improvements were made partly by him and partly by complainant, after his death. The rails were made by C. Bowen and complainant broke about two acres of the land the spring before the land sale.

Lewis Lathrop testified that he went with complainant May 23, 1842, when he tendered to defendant $69.50 for the disputed premises. The defendant observed that he paid Jared Warner's expenses to the land office when he entered the land.

William Wright testified that the complainant had occupied and improved the lands, and the improvements were worth $100 at the time of the land sale. The defendant told him that he had entered the land in dispute, which he intended to exchange with J. H. Lockwood should complainant fail to pay him the money, and that complainant was to have the land if he paid the money. This conversation was the winter after the land sale.

Richard Lane testified that he heard defendant say he had entered 40 acres (the land in dispute) and intended giving it back " to them" when the purchase money and interest was paid, but he did not believe they would pay it ; thinks this was in spring of 1842 ; understood defendant to mean by " them" the family of C. Bowen, deceased. Understood land in dispute was a part of C. Bowen's farm.

Jared Warner testified that in June, 1841, he attended the land sale at Muskoda ; the defendant sent money by him to enter land and he entered the premises in question in defendant's name. The defendant stated to him about the time he gave him the money that the land was a part of the claim of C. Bowen, deceased, who owed him near $100, which he thought there was a dull chance of getting and he would enter part of the claim to remunerate him self. Complainant asked witness if defendant intended

to enter part of his father's claim, and witness told him he had sent money to do so. He wished to know if defendant would not sell him the place or return it to the family. Witness replied that he would use his endeavors to have it restored. Complainant told witness that he would give defendant a receipt in full for what he owed him (complainant). The defendant then owed complainant $100 or more, and C. Bowen's estate owed defendant near $100. While at Muskoda the complainant made a proposition to the defendant through witness that he would cancel his account against defendant and pay him back the entrance money if defendant would convey the land to him and give him his claim against the estate of C. Bowen, deceased. In the winter of 1841-2, at the request of the defendant, witness informed complainant that defendant was ready to accept the proposition, and complainant said he would not comply with it for the reason that the estate would probably prove insolvent and the demand of the defendant against it would be of no value. He (witness) had no authority to act in the matter for the defendant at the time of the land sale. Witness and complainant administered on the estate of C. Bowen, deceased, and the land claim was not inventoried; was not authorized by defendant to tell complainant since the entry of the land that he might occupy it; the defendant and himself were not partners, and he had no interest in the matter in dispute. To rebut the testimony of Jared Warner, it was proved that the land claim of C. Bowen was inventoried and returned as a part of his estate and testimony was given tending to show that Jared Warner and the defendant were partners in trade.

Barbara Bowen testified that Jared Warner stated that he thought he could get the money of his father the defendant to enter the land, and when complainant paid the entrance money he could have it. Had frequently heard him say that whatever was his father's interest was his interest, as they were engaged in business together. He said complainant could not enter the land in his own

name because he was administrator of the estate and therefore he would try and get the money of his father and enter it in his father's name, with the condition that the complainant might have it on paying back the purchase money.

Mary Bowen testified that on one occasion she asked Jared Warner if he could not get the money that was due to complainant from him to enter the land in dispute ; he replied that he had not the money, that his father had money belonging to Mr. Mills but would not let him have it to pay complainant. Jared Warner said he would get the money of his father and enter the land and in the event that complainant paid him back the entrance money he, complainant, should have the land.

The district court decreed that the defendant should convey the land to complainant on payment of the purchase money and interest, and granted a perpetual injunction against the action at law to recover rent. From this decree the defendant appealed.

*Alfred Brunson*, for appellee.

1. In addition to the proof adduced to show the agreement alleged in the bill is the well known sentiment universally prevalent in the country that no one will be permitted to enter another's claim on lands without an agreement to convey upon payment of purchase money and interest.

This rule is as well established in this country as the customs of the Saxon Heptarchy and makes common law in relation to this matter. As to the law governing courts in decreeing specific performance he cited 1 Barb. Eq. Dig. 100, §§ 6, 7, 8, 20 ; id. 102, §§ 26, 28, 29, 36.

*J. T. Mills*, for appellant.

1. There is not sufficient evidence to overthrow the answer of the defendant, and where the evidence is conflicting the statute ought to prevail. *Rowton v. Rowton*, 1 Hen. & Mun. 91.

2. The alleged contract being verbal is void under the statute of frauds, and there is no proof of any facts which

amount to part performance. 1 Sug. Vend. 134, 148 ; 2 Story's Eq., § 68. The part performance must be an act which would not or could not have been done with any other view than to perform the contract. *Frame v. Dawson*, 14 Vesey, 386 ; *Phillips v. Thompson*, 1 Johns. Ch. 131. If the complainant relies upon acts of possession and improvement, the claim is answered by the fact that he made no improvement after the land sale, and prior possession, will not satisfy the rule, as it did not originate or proceed from the contract and was not an act done under the contract. 2 Story's Eq. 68 ; 1 Sug. Vend. 144 ; 3 Rand. 256.

IRVIN, J. This is an appeal from the decision of the district court of Crawford county, in which the court gave a decree in favor of the complainant.

The grounds upon which the aid of a court of chancery is invoked, as alleged, are these : The complainant in the year 1841, had and held possession of a certain tract or parcel of the public land in the county of Crawford upon which there were improvements by fencing and ploughing, which he alleges were made by himself ; that in June of that year, the land sales for that district of country took place at Muskoda ; that the complainant not having the funds with which to enter the land thus held and improved, one *Elihu Warner* by Jared Warner his agent, offered to aid him therein ; that the said Warner agreed to and with the complainant verbally, that he would enter the land in question, in the name *Elihu Warner*, the defendant, and that when the said complainant should thereafter return to him the principal and interest of the purchase money, the land should then become the property of the said complainant by proper conveyance ; that about eleven months after the date of purchase or entry, he, in presence of a witness, made a tender of the principal and interest on the purchase money to *Elihu Warner*, whose money the said Jared professed to have used for the purchase ; and that the

said *Elihu* refused to receive the money so tendered, and to give a deed for said land. To enforce the conveyance of this land, this suit is brought.

The defendant, in his answer, wholly denies all the material allegations of the bill in relation to the alleged contract.

The agreement asserted in this case is a parol agreement, and can only be taken out of the statute of frauds by a part performance.

In the examination of the evidence in this case, we find it to consist, as we think, of loose and unconnected conversations, held at different times, on different occasions, with and before different persons, and in all respects uncertain, and in many, contradictory.

The first fact to be ascertained and settled in all cases of parol contracts for land, is the contract itself.

" To entitle a party to take a case out of the statute, on the ground of part performance of the contract, he must make out, by clear and satisfactory proof, the existence of the contract as laid in the bill; and the act of part performance must be of the identical contract set up." 1 Johns. Ch. 131; Sug. Vend. & Pur. 134; Story's Eq. 67; 14 Vesey, 386. In this case there is no such clear and satisfactory proof of the existence of the contract here asserted, as the rule of law just recited calls for, and upon that ground we think this case might safely rest in denial of the prayer of the bill for specific performance; but, as part performance is relied on, as an important feature in this case, it is well to notice in what that consists. Upon the examination we find that it be the fact as to possession; that the complainant before the pretended contract, was in the possession of the land and remained therein afterward to the date of his bill. The chancellor in the case of *Phillips v. Thompson*, 1 Johns. Ch. 148, says : " It is settled, that if a party sets up part performance, to take a parol agreement out of the statute, he must show acts unequivocally referring to and resulting from *that* agreement; such as the party would not have

Bowen vs. Warner.

done, unless on account of that very agreement, and with a direct view to its performance, and the agreement set up must appear to be the same with the one partly performed. There must be no equivocation or uncertainty in the case. The ground of the interference of the court is not simply that there is proof of the existence of a parol agreement, but that there is *fraud* in resisting the completion of an agreement partly performed. These principles have been recognized in a series of decisions. *Lacow v. Mertins*, 3 Atk. 4 ; *Nevin v. Belknap*, 2 Johns. 587 ; *Frame v. Dawson*, 14 Vesey, 386 ; *Climan v. Cook*, 1 Sch. & Lef. 41 ; *Lindsay v. Lynch*, 2 id. 1. We do not think the act of *remaining* in possession such an act as is regarded as sufficient to prove part performance, and therefore as taking the case out of the statute.

However much the evidence in this case may lead to the suspicion that such an agreement as is here asserted, was made between the parties, and that for fraudulent purposes it was found convenient to deny it, nevertheless we are constrained to say, that neither is the agreement asserted, proved in that clear manner, nor the part performance of that character, called for by the law. We therefore are of opinion that the complainant is not entitled to the relief he asks for ; and that the district court erred in decreeing specific performance.

It is therefore adjudged and decreed, that the decree of the district court be reversed, and that the same be so certified with directions to dismiss the bill at complainant's cost.

DUNN, C. J., *dissented.*